

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. O. P. Lockhart
Chairman
Board of Insurance
Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4619
Re: Under the facts submitted are
the benefits offered by the Dallas
Medical Plan, insurance benefits and
if so, should the Plan come under the
supervision of the State Insurance
Department?

Your letter of May 26, 1942, requesting our opinion
on the above stated question reads as follows:

"The above named organization is represented to
be a non-profit medical care plan for low income
groups and is sponsored by the Dallas County Medical
Society. The Dallas County Medical Plan was issued
special Charter Number 78184 by the Secretary of
State on June 18, 1940. The purpose clause of the
Charter is as follows:

"'The purposes for which this corporation is
formed is to collect statistics, to compile reports
and to assist in the promotion of scientific, experi-
mental, educational and preventive medicine for re-
lief, and other activities to the best interest of the
community in relation to the health and welfare of
the people.'

"At the present time the Plan is subscribed to by
only three firms, Ford Motor Company, Neuhoff Packing
Company, and the Group Hospital Service, Incorporated.
The plan is to assist the residents of Dallas County
of the low income group to obtain the services of phy-
sicians by providing funds to pay for medical services
after they have been furnished in return for a $2.00
monthly subscription payment. The Plan does not at-
tempt to furnish physicians. The subscribers may select
a physician of his choice who is a member of the Dallas
County Medical Society who has registered with the Plan
to render authorized services.

"Subscribers are accepted only in groups. All in-
dividuals in a group must be employed persons of a single
organization. Groups must number twenty or more and to
be eligible for membership sixty percent of the entire
group must be enrolled. Subscribers must be under the
age of sixty-five, with an annual income not in excess
of $2,000.00.

"When the applicant is accepted as a subscriber, he is given an identification card and a certificate which explains the services and benefits he is entitled to receive. The subscriber's employer remits the monthly subscription fee to the Plan as a payroll deduction, and the physician's charges for services rendered to a subscriber are billed and paid by the Plan on an agreed basis.

"The certificate given to the subscriber provides for the following services:

"'1. Medical and surgical care from doctors of medicine, of their own choice, who are registered with the Dallas County Medical Plan, at home, office or hospital.

"2. Consultation services and special medical services such as x-ray, laboratory, and anesthesia performed by doctors of medicine.

"3. Obstetrical services after membership for a period of twelve consecutive months.

"4. Medical services necessary to establish a diagnosis of tuberculosis, gonorrhea, syphilis and nervous and mental diseases, but services will not be rendered under these benefits for the treatment of tuberculosis, gonorrhea, syphilis and mental disorders after the diagnosis has been established.

"5. An individual subscriber shall be entitled, in any one subscription year, to a maximum of $325.00 worth of medical service.'

"We request your opinion as to whether or not the benefits offered by the Dallas County Medical Plan are insurance benefits and if so, whether or not the Plan should come under the supervision of this Department.

"For your information we are enclosing the following:

"(1) Identification Certificate
"(2) A brochure describing the Plan
"(3) Subscriber's Identification Card
"(4) Dallas County Medical Plan Initial Service Report
"(5) Application for Registration with Dallas County Medical Plan
"(6) Application for Enrollment with The Dallas County Medical Plan

"(7) Monthly Service Report

"Will you please return the above enclosures to us when you have rendered an opinion on this question?"

The purpose clause of the above mentioned corporation is set out in your letter heretofore quoted and Sections 6 and 7 of the Charter of said corporation read as follows:

"6. The corporation shall have no capital stock and shall not be operated for profit. Its support shall be provided by endowment, donations, devises and bequests, and from such fees as may be collected by it from members or subscribers.

"7. This shall be a non-profit, charitable, scientific and benevolent corporation, and shall have no capital stock and owns no assets."

House Bill No. 191, Acts of the Forty-sixth Legislature, 1939, Regular Session, (Articles 4590a and Subdivision 104 of 1302, Vernon's Annotated Civil Statutes) authorize the organization and incorporation of non-profit corporations for group hospital service. The Act further provides in part "... that such corporations organized and operated under the provisions of this Act shall not be required by any department of this State to post bond, or place deposits with any department of this State to begin and/or operate under this Act and the provisions of Title 78 of the Revised Civil Statutes of Texas of 1925, are hereby declared to be inapplicable to corporations organized and/or operated under this Act."

However, such corporations are subject to certain supervision of the Insurance Department of this State. Under the facts stated in your letter, it is apparent, that the above mentioned corporation is not incorporated under Article 4590a, supra, or attempting to operate under such statute.

The word "insurance" is defined in Corpus Juris, Vol. 32, page 975, as follows:

"Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency. As regards property and liability insurance, it is a contract by which one party promises on a consideration to compensate or reimburse the other if he shall suffer loss from a specified cause, or to guarantee or indemnify or secure him against

loss from that cause. With some exceptions, particularly in the case of life insurance, insurance is a contract of indemnity. The term insurance denotes also the act of insuring by the contract here defined, as well as the system of business of which such contracts are the characteristic and vital element."

Couch on Insurance, Vol. I, Section 2, page 3, defines the word "insurance" as follows:

". . . Strictly defined, insurance, . . . is a contract whereby one for a consideration agrees to indemnify another for liability, damage, or loss by perils to which the subject insured may be exposed. In . . . accident insurance it is the . . . health of the person that is the subject to the contract. . . . It also has been said that the word 'insurance' in common speech and with propriety is used quite as often in the sense of contract of insurance, or act of insuring, as in that expressing the abstract idea of indemnity or security against loss. . .

". . . In this connection it should be remembered that the character of insurance is not to be determined by the character of the company writing it, the nomenclature used, or the manner or mode of affording insurance, but by the nature of the contract actually entered into or issued. In other words, the true character of an alleged contract of insurance cannot be concealed or changed by the use or absence of words, it being immaterial whether or not the contract on its face purports to be one of insurance, since the courts will look behind the terminology to ascertain what the parties intended to accomplish."

Cooley's Brief on Insurance, Second Edition, Vol. 1, page 6, defines "insurance" as follows:

"Insurance has been defined in general terms as a contract by which one party undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event. . . A contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent or do some act of value to the assured upon the destruction or injury of something in which the other party has an interest. . ."

The word "insurance" is defined in Texas Jurisprudence, Vol. 24, page 650, as follows:

"Insurance is a word of comprehensive and varied meaning. In a general sense the term signifies an agreement, for a consideration, to pay a sum of money upon the happening of a particular event or contingency, or indemnify for loss in respect of a specified subject by specified perils; in other words, an undertaking by one party, usually called the insurer, to protect the other party, generally designated as the insured or the assured, from loss arising from named risks, for the consideration and upon the terms and under the conditions recited."

In view of the foregoing, it is our opinion, that the benefits offered by the above named corporation are insurance benefits and that such corporation is not authorized to issue any form of insurance contracts or policies. As said corporation has no authority to enter into the contracts above mentioned or issue insurance policies, it would not come under the supervision of the State Insurance Department.

We do not hold that the Insurance Department of this State is without authority to make investigation to determine whether the insurance laws are being violated and to see that no company does an insurance business without authority of law. The Insurance Department can make such investigation as is proper and take such steps and make such recommendations as may be necessary pertaining to the enforcement of the insurance laws and requiring a compliance therewith. (See Art. 4682, V.A.C.A.)

In compliance with your request we are returning herewith the enclosures accompanying your request.

APPROVED JUN 12, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:    .  BWB, CHAIRMAN

AW:LM:wb

ENCLOSURES

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ardell Williams
Ardell Williams, Assistant